## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FANTASYSRUS 2, L.L.C., | Civil No. 12-1176 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |
| CITY OF EAST GRAND FORKS, MINNESOTA, | |
| Defendant. | |

Randall D.B. Tigue and Rachel K. Nelson, **RANDALL TIGUE LAW OFFICE, PA**, 810 North Lilac Drive, Suite 201, Golden Valley, MN 55422; and Barry N. Covert, **LIPSITZ GREEN SCIME & CAMBRIA**, 42 Delaware Avenue, Suite 100, Buffalo, NY 14202, for plaintiff.

James J. Thomson and Mary D. Tietjen, **KENNEDY & GRAVEN, CHARTERED**, 200 South Sixth Street, Suite 470, Minneapolis, MN 55402; and Ronald I. Galstad, **GALSTAD, JENSEN & McCANN PA**, 1312 Central Avenue NE, East Grand Forks, MN 56721, for defendant.

Plaintiff Fantasysrus 2, LLC ("Fantasysrus") briefly operated a retail store known as Fantasys in East Grand Forks, Minnesota before closing because it lacked the proper permits. The City of East Grand Forks ("the City") determined that because Fantasys sold adult novelties and videos, the store engaged in "adult uses," requiring a special use permit to comply with the City zoning code. The City only issues special use permits for businesses in the I-2 zoning district, not the C-2 zoning district where Fantasys is currently leasing retail property. The City denied Fantasysrus the permits required to operate Fantasys, and as a result, Fantasys closed. Fantasysrus filed a civil rights action

under 42 U.S.C. § 1983 on May 16 alleging that the City zoning code is unconstitutional. Fantasysrus now seeks a preliminary injunction[1] preventing the City from taking any action to enforce the adult entertainment provision of its zoning code against Fantasysrus and waiving the security requirement of Rule 65(c).  The City argues that the Court should abstain from hearing the case because the *Younger* abstention doctrine applies.

The Court will decline to apply the *Younger* abstention doctrine because there is no pending state judicial action.  Because it finds that Fantasysrus is likely to succeed on the merits and has satisfied the other *Dataphase* factors, the Court will grant its motion for a preliminary injunction.  Finally, because the City did not object, the Court will waive the Rule 65 security requirement.

**BACKGROUND**

Fantasysrus's retail store, Fantasys, wishes to sell products including "lingerie, club wear, dance wear, bath and body products, greeting cards, T-shirts, and novelties." (Compl. ¶ 6, May 16, 2012, Docket No. 1.)  Fantasys intends to sell, "as an insignificant portion of its inventory, various sexual novelty and adult videos," in a separate room, accounting for less than ten percent of its total floor space.  (*Id.* ¶¶ 9-10.)  Fantasysrus has leased premises for the store in a C-2 highway commercial district zone; retail uses are permitted in this zone.  (*Id.* ¶¶ 4, 6.)

---

[1] Fantasysrus originally sought a preliminary injunction and a temporary restraining order. (Docket No. 2.)  In a telephone conference on May 30, Fantasysrus agreed not to continue to seek a TRO because the Court could hold a hearing on its motion for a preliminary injunction on June 7.

On May 9, 2012, Nancy Ellis, senior planner for the City, refused to issue Fantasys a certificate of occupancy, a document necessary for the store to open. (*Id.* ¶ 11 & Ex. B.) The letter explained that the certificate was being denied because "the sale of sexually oriented devices classifies the store as a sexually oriented store and is considered an Adult Use" under the City's zoning code. (*Id.*, Ex. B.) Under § 152.247 of the zoning code, adult uses are permitted only in the I-2 district. (*Id.* ¶¶ 12.) Adult uses are defined by § 152.006 as

> [u]ses which include a sexually oriented arcade; sexually oriented bookstore; sexually oriented video store; sexually oriented store; sexually oriented cabaret; sexually oriented conversation/rap parlor; sexually oriented massage parlor; sexually oriented motel; sexually oriented theater; sexually oriented steam room, bath house or sauna; or a nude model studio. Activities classified as obscene, as defined by M.S. § 617.241 . . . are not included.

(*Id.*, Ex. A, City Zoning Code.)[2]  The City Zoning Code contains no definition of "sexually oriented" or "sexually oriented store." (*Id.* ¶ 8.)

After receiving Ellis's letter, Fantasys closed and has not reopened. Although Fantasysrus had the right to appeal Ellis's decision to the Planning Commission and City Council within thirty days (*see id.*, Ex. B), they did not do so.[3]  Section 152.021 of the City's Zoning Code states:

> All findings and decisions of the planning staff or other official involved in the administration of this chapter shall be final subject to appeal to the Planning Commission, except as otherwise provided by this chapter. Any

---

[2] Also available at http://www.egf.mn/DocumentView.aspx?DID=653.

[3] Ellis's letter is dated May 9, 2012. The thirty day period to submit the appeal expired on June 8, 2012.

>affected person may initiate such a request by filing an appeal with planning staff on an approved form.  All appeals shall be filed within 30 days of the date of the decision. The planning commission shall hold a public hearing on each complete application for appeal and, after the close of the hearing, shall make findings and submit its recommendations to the City Council. . .
>
>The City Council shall make the final decision regarding all appeals requests. Approval shall require a 2/3-majority vote of the City Council.

(City Zoning Code § 152.021(A-B).)

## ANALYSIS

### I.   JURISDICTION: *YOUNGER* ABSTENTION DOCTRINE

The City argues that this Court should apply the *Younger* doctrine and abstain from exercising jurisdiction because Fantasysrus cold have pursued an administrative appeal to the City Council and, if necessary, a review of the City Council's decision in state court.  Further proceedings by this Court, the City contends, would interfere with those state proceedings, offending the principles of comity and federalism.

### A.   Standard of Review

In *Younger v. Harris*, the Supreme Court held that a federal court, in the absence of unusual circumstances, cannot interfere with a pending state criminal prosecution. 401 U.S. 37, 41 (1971).  The Court later extended *Younger* to cover civil cases.  *See Night Clubs, Inc. v. Fort Smith*, 163 F.3d 475, 479 (8th Cir. 1998) (summarizing development of the doctrine).  To determine whether the *Younger* abstention doctrine applies, the Court must examine "(1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and

(3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). If all three factors are met, the federal court should abstain unless it "detects bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate." *Id.* (internal quotation marks and citation omitted). The parties do not contest prong two,[4] and Fantasysrus does not claim that any of the exceptions are applicable. For the reasons explained below, the Court finds that there is no ongoing judicial proceeding.

### B.   Type of Proceeding

Administrative proceedings which investigate, declare or enforce liabilities "as they stand on present or past facts and under laws supposed already to exist" are judicial proceedings for the purposes of *Younger*. *Alleghany Corp. v. Pomeroy*, 898 F.2d 1314, 1316 (8th Cir. 1990). The Eighth Circuit has held that a planning commission's denial of a business license application "is more accurately characterized as judicial rather than legislative." *Night Clubs, Inc.*, 163 F.3d at 479; *see also Pomeroy*, 898 F.2d at 1316 (applying *Younger* to a commissioner's denial of an application because the actions are judicial). These cases make clear that Ellis's denial of Fantasysrus's license should be considered a judicial proceeding.

---

[4] "[I]t is well-established that for abstention purposes, the enforcement and application of zoning ordinances and land use regulations is an important state and local interest." *Night Clubs*, 163 F.3d at 480.

## C. Ongoing Proceeding/Exhaustion of Administrative Remedies

The next question is whether there are "ongoing" state proceedings. Fantasysrus sought no administrative remedies before filing this case – and, therefore, no state proceeding is currently pending. The City contends that the Court should still abstain because the Eighth Circuit has held that a party cannot avoid *Younger* by declining to seek state appellate remedies. *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1144 (8th Cir. 1990). Although a plaintiff is generally not required to exhaust its administrative remedies before filing a § 1983 action in federal court, *see, e.g.*, *Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 500 (1982), the Eighth Circuit has indicated that *Younger* abstention may be appropriate in certain cases involving claims brought under § 1983, *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 881 (8th Cir. 2002) ("The Supreme Court has applied *Younger* in cases involving state civil proceedings and federal claims under § 1983, and so have we[.]") (internal citation omitted). The Court must consider whether abstention is appropriate in a dispute such as this one when Fantasysrus has not exhausted its administrative remedies.

In *Cedar Rapids Cellular Telephone*, the Eighth Circuit held that *Younger* required abstention in a § 1983 action and looked at whether "the relief sought [in federal court] . . . would unduly interfere with ongoing state judicial proceedings." *Id.* In *Cedar Rapids Cellular Telephone*, however, there was a pending case in state district court, making the scope of the state judicial proceeding clear. *Id.* at 877; *see also Night Clubs, Inc.*, 163 F.3d at 477-78 (noting an appeal was pending at the time the federal case was submitted). By contrast, in *Planned Parenthood of Greater Ia., Inc. v. Atchison*, the

- 6 -

Eighth Circuit held that *Younger* abstention was improper because "the plaintiff was not yet subject to coercive proceedings" and, therefore, "no administrative proceeding of a kind subject to *Younger*" was "ongoing." 126 F.3d 1042, 1047-48 (8th Cir. 1997). The Court concludes that without a pending case in a state court – or even a pending administrative proceeding or any type of proceeding – this case is more akin to *Atchison* than to *Cedar Rapids Cellular Telephone*, and that *Younger* abstention would be inappropriate here.

The Court will note that in some cases the Eighth Circuit has held that *Younger* applies even when there is no pending administrative proceeding.[5] In those cases, however, the administrative proceeding was final, and the plaintiff was free to seek a remedy in a state court. In contrast, Fantasysrus has not even initiated administrative proceedings, and an extensive appeals period would be required before an action in state court was available.

Other circuit courts look to the type of the administrative proceeding – coercive or remedial – to determine if abstention is required. *See Brown ex rel. Brown*, 555 F.3d 882, 890 (10th Cir. 2009) (summarizing cases from the First, Third, Fourth, and Seventh

---

[5] In *Alleghany Corp. v. Pomeroy*, the North Dakota Insurance Commissioner had rejected the plaintiff's application to acquire control of the St. Paul Companies. 898 F.2d at 1315. The plaintiff did not seek review of the commissioner's decision in state court but rather commenced an action in United States District Court. *Id.* at 1316-17.

In *3005 Cedar, LLC v. Minneapolis*, the plaintiff never applied for a license for the rental hall it was operating. No. 09-1580, 2010 WL 455307, at *1 (D. Minn. Feb 3, 2010). After the city cited the plaintiff for operating a rental hall without a license, the plaintiff sought an administrative hearing; the administrative hearing officer affirmed the citation. *Id.* at *2. The plaintiff, instead of seeking judicial review of the hearing officer's decision in the Minnesota Court of Appeals, then filed a complaint in this Court. *See id.* at *2 n.2.

Circuits).[6]  Although the Eighth Circuit has not adopted this analysis,[7] the Court finds that it is consistent with Supreme Court precedent and instructive in this case.

A state proceeding is generally "coercive" if it was initiated by the state, making the plaintiff's participation mandatory or if the federal plaintiff is contending that the state proceeding is unlawful.  *Id.* at 889.  A proceeding is also "coercive" if the plaintiff "has committed an alleged bad act" and "the state proceeding [was] initiated to punish the plaintiff."  *Id.* at 891.  In contrast, a state proceeding is generally "remedial" if the plaintiff initiated the state proceeding of his or her own volition to right a wrong inflicted by the state or if the federal plaintiff is using the state proceeding to seek a remedy for some other state-inflicted wrong.  *Id.*  Courts employing this framework hold that coercive proceedings are entitled to *Younger* deference and require federal plaintiffs to perfect their § 1983 claims by exhausting state remedies.  *Id.* at 890.  Because Fantasysrus would have had to appeal Ellis's determination to initiate an administrative proceeding, any further state proceeding would be remedial, not coercive.  Consequently, under a coercive / remedial analysis, no abstention is required.

---

[6] The Sixth Circuit does not apply *Younger* when "the federal plaintiffs are also *plaintiffs* in the state court action and the plaintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts."  *Devlin v. Kalm*, 594 F.3d 893, 895 (6th Cir. 2010) (internal quotation marks omitted).

[7] In *Hudson v. Campbell*, the Eighth Circuit noted that "[o]ther circuits recognize a distinction between coercive and remedial actions" and that it had "recognized the existence of the coercive-remedial distinction" in its other abstention cases.  663 F.3d 985, 987 (8th Cir. 2011).  Nevertheless, the court noted that "we have not considered the distinction to be outcome determinative."  *Id.*

The third *Younger* factor addresses whether Fantasysrus would have an adequate opportunity to raise a constitutional challenge in a state proceeding. Because Minnesota courts can review constitutional questions on appeal from an administrative decision, *see Neeland v. Clearwater Mem. Hosp.*, 257 N.W.2d 366, 368 (Minn. 1977), the Court finds that if state proceedings were initiated, Fantasysrus would eventually have an adequate opportunity to raise its constitutional challenges.

Because Ellis's denial of Fantasysrus's permit application did not initiate an **ongoing** administrative proceeding, the Court concludes that Fantasysrus was free to choose between a local administrative appeal and an action in federal district court. Moreover, proceeding in Federal Court permits Fantasysrus to avoid the long delay that would otherwise occur before it had an opportunity to raise constitutional challenges. *Younger* abstention is inappropriate due to the absence of an ongoing judicial proceeding.

## II.     MOTION FOR A PRELIMINARY INJUNCTION

Because the Court finds the *Younger* abstention doctrine inapplicable, it will now address Fantasysrus's motion for a preliminary injunction. The Court will grant the motion because each of the *Dataphase* factors is satisfied.

### A.     Standard of Review

The Court must consider four primary factors in determining whether a preliminary injunction should be granted: 1) the threat of irreparable harm to the moving party; 2) the state of balance between the alleged irreparable harm and the harm that granting the preliminary injunction would inflict on the other party; 3) the likelihood of

the moving party's success on the merits; and 4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The Court's aim is to preserve the status quo until the merits of the case are determined. *Id.*

### B. *Dataphase* Factors

#### 1. Threat of Irreparable Harm to the Moving Party

"It is well-settled law that a 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). If Fantasysrus can establish a sufficient likelihood of success on its First Amendment claim, it will also establish irreparable harm as the result of deprivation. *Id.* Because the Court finds a likelihood of success on the First Amendment claims, *infra*, the Court finds Fantasysrus has established a threat of irreparable harm.

#### 2. Balance of the Harms

"The balance of equities . . . generally favors the constitutionally-protected freedom of expression." *Phelps-Roper*, 545 F.3d at 690. The City argues that if a preliminary injunction is issued it will create "apparent irreparable harm to [the] governmental unit by a continuous and knowing violation of that body's duly promulgated laws and regulations." *Rockville Twp. v. Lang*, 387 N.W.2d 200, 205 (Minn. Ct. App. 1986). In *Rockville Township*, however, the state court was approving the use of an injunction to prevent a party's operations without a permit. *Id.* In contrast, allowing a business to operate while the Court determines the constitutionality of a city's

ordinance would not undermine the authority of government body. Fantasysrus is not acting in disregard of the city's ordinance but has rather asked the Court to determine if the ordinance may be enforced. The Court concludes that this factor weighs in favor of a preliminary injunction.

### 3. Likelihood of the Moving Party's Success on the Merits

Fantasysrus argues that it is likely to succeed on each of its theories: (1) that the ordinance is unconstitutionally vague; (2) that the ordinance is unconstitutionally overbroad; (3) that the ordinance subjects First Amendment rights to the "unbridled discretion" of a government official; and (4) that the ordinance suppresses or severely restricts access to constitutionally protected speech. The City contends that Fantasysrus is unlikely to succeed on the merits because the ordinance is not vague and the First Amendment does not apply.

#### a. Vagueness

Fantasysrus claims that the City's ordinance is impermissibly vague because it contains no definition of "adult uses" and permits arbitrary enforcement. (Pl.'s Mem. in Supp. at 8, Docket No. 3.) A law is void for vagueness[8] if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). First, the city code defines "adult uses" in

---

[8] "The void-for-vagueness doctrine is embodied in the due process clauses of the fifth and fourteenth amendments." *Woodis v. Westark Cmty. Coll.*, 160 F.3d 435, 438 (8th Cir. 1998).

§ 152.006, listing various examples of "sexually oriented" businesses like an "arcade," "bookstore," or "store."  The phrase "sexually oriented" as used in § 152.006 is not, however, defined.  The City argues that the phrase "sexually oriented" is not vague because the phrase is "used throughout the federal case law involving the regulation of sex-based businesses."  (Def.'s Mem. in Opp. at 18, Docket No. 11.)  The use of the term "sexually oriented" by the courts in other contexts is only marginally relevant.  The issue is whether the terms "adult use" or "sexually oriented" **in the context of this ordinance** fail "to provide a person of ordinary intelligence fair notice of what is prohibited, or [are] so standardless that [they] authorize[] or encourage[] seriously discriminatory enforcement."  *See Williams*, 553 U.S. at 304.

The Eighth Circuit has upheld a Rochester ordinance that restricted the location of businesses with "adult establishment uses" where the code classified a business as an adult bookstore "if a 'substantial or significant portion' of its merchandise is sexually explicit."  *ILQ Inv., Inc. v. City of Rochester*, 25 F.3d 1413, 1418 (8th Cir. 1994).  The Rochester ordinance also defined an "adult establishment" as a "business that offers **any** entertainment 'characterized by an emphasis' on sexually explicit activity."  *Id.*  In contrast, the East Grand Forks city ordinance does not define "sexually oriented" and provides **no** guidance as to how much of the merchandise or activity must be sexually explicit or an "adult use" to trigger the ordinance.  Consequently, an art gallery with some paintings of nudes, a dance studio that teaches belly dancing, a sauna that allowed nudity at certain times, or a bookstore selling *Fifty Shades of Gray* could be "sexually oriented" or not, depending on the discretion of the city official.  Because the ordinance

does not define how much "adult use" or "sexually oriented" content is required to trigger application of the ordinance, the Court concludes that Fantasysrus is likely to be able to show that the term "sexually oriented" is impermissible vague.

### b.    First Amendment Claims: Overbroad, Unbridled Discretion, Restricted Access

Fantasysrus's other claims are based on the First Amendment.  The City argues that each of these claims should fail because Fantasys would only "incidentally" sell a few items protected by the First Amendment – and that the items in the store related to "speech or expressive conduct" are not enough to give the entire store First Amendment protections.  (Def.'s Mem. in Opp. at 16.)

The city in *Doctor John's, Inc. v. Sioux City* made a similar argument – arguing that the business, Doctor John's, would have been a "sex shop" under the "sex toys" definition of its ordinance, which did not implicate First Amendment protections.  467 F. Supp. 2d 925, 928 (N.D. Iowa 2006).[9]  That court ruled: "to the extent that [the city's ordinance] defined a 'sex shop' on the basis of a 'combination' of two or more categories of items including 'adult media,'" First Amendment protections still applied.  *Id.*  As noted above, the City's ordinance is also imprecise, and, therefore, a "sexually oriented store" containing only sexually explicit books could fall within the ordinance as could a store containing only two books and thousands of sexual novelties.  Notably, the

---

[9] *Order clarified sub nom. Doctor John's, Inc. v. Sioux City*, No. C 03-4121, 2007 WL 200927 (N.D. Iowa Jan. 13, 2007), *order clarified*, *Doctor John's, Inc. v. Sioux City*, No. C 03-4121, 2007 WL 200928 (N.D. Iowa Jan. 16, 2007).

ordinance provides no framework for a city official to differentiate between a "sexually oriented store" and a "sexually oriented bookshop." The delineation would be entirely in the discretion of the city official interpreting the ordinance. Consequently, the Court finds that First Amendment protections apply to Fantasys because it is unclear how much expressive content is required for a business to fall under the ordinance or subparts of the ordinance.

Other than arguing that Fantasys is not entitled to First Amendment protection, the City does not address the substance of Fantasysrus's First Amendment claims. The Court concludes that on the present record, Fantasysrus has shown it is likely to succeed on its First Amendment claims.

### 4. The Public Interest

Because "[i]t is always in the public interest to protect constitutional rights," *Phelps-Roper*, 545 F.3d at 690, the Court concludes that this final factor weighs in favor of a preliminary injunction. Because each of the *Dataphase* factors supports a preliminary injunction, the Court will grant Fantasysrus's motion. Moreover, although Fantasys was only open briefly,[10] granting the motion will allow Fantasys to resume business, preserving the status quo.

---

[10] At oral argument the parties represented that Fantasys did open without a permit, but that the city took no enforcement action.

### III. SECURITY REQUIREMENT

Federal Rule of Civil Procedure 65 requires that a preliminary injunction or a temporary restraining order shall only issue if the applicant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed R. Civ. P. 65(c). Fantasysrus asks that the Court waive the security requirement because no demonstrable harm could occur to the City if the injunction and temporary restraining order are granted.

Because the City did not object to Fantasysrus's request that the security requirement be waived, the Court will grant the waiver. *See Northshor Experience, Inc. v. Duluth*, 442 F. Supp. 2d 713, 723 (D. Minn. 2006) (granting a waiver when the defendant had not objected or otherwise "addressed this issue or attempted to quantify any dollar amount of harm that it may face from a wrongly issued injunction").

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for a Preliminary Injunction [Docket No. 2] is **GRANTED**. A preliminary injunction is hereby entered against defendants as follows:

> Until further order of this Court, defendants are enjoined from enforcing the provisions of the East Grand Forks city ordinance related to adult entertainment against Plaintiff in the operation of Plaintiff's business Fantasys at 207 Northeast Second Avenue, East Grand Forks, Minnesota.

2.      Plaintiff is not required to provide security under Federal Rule of Civil Procedure 65(c).

DATED: July 25, 2012  
at Minneapolis, Minnesota.

          ____s/ John R. Tunheim____  
            JOHN R. TUNHEIM  
           United States District Judge